UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR IMMIGRATION STUDIES**<br><br>Plaintiff<br><br>v.<br><br>**RICHARD COHEN and HEIDI BEIRICH**<br><br>Defendants | Civil Action No. 1:19-cv-00087-ABJ<br><br>Oral Argument Not Requested |

**PLAINTIFF CENTER FOR IMMIGRATION STUDIES' RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Center for Immigration Studies ("CIS"), by undersigned counsel, hereby submits its response memorandum in opposition to Defendants Richard Cohen and Heidi Beirich's ("Defendants" collectively) Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.[1]

---

[1] The Defendants' Memorandum in Support of Their Motion to Dismiss (Doc. 11) will be cited as "Motion at _."  Citations to CIS' Complaint will be to "¶_."

## **INTRODUCTION**

Center for Immigration Studies' RICO claim is predicated on the ongoing scheme to defraud it of support from its donors by falsely calling it a "hate group," a term typically used by Defendants to connote racism.  Being labeled a racist or a racist organization is the worst form of opprobrium in modern day America.  It inevitably causes immediate and permanent damage—the Defendants' goal being to "wreck" and "destroy" CIS financially.  ¶¶12, 22. In this case, it has cost CIS at least $10,000 in lost donations so far and will continue to cost it money as long as Defendants continue their ongoing and never-ending campaign to destroy it.

In their Fed. R. Civ. P. ("Rule") 12(b)(6) Motion to Dismiss, the Defendants do not make any meaningful challenge to the elements of a RICO claim under 18 U.S.C. §§1962(c) and (d), instead relegating a few cursory points together in one footnote.  Rather, the Defendants base their entire Motion to Dismiss on the theory that they have a constitutional right to falsely call CIS a hate group.  This is wrong.  The First Amendment does not apply to CIS because it is not a "state actor," an issue the Motion completely ignores.  Nor is the state action requirement satisfied because the case is brought pursuant to a federal statute.  *See, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)(holding that state action is only created when a deprivation is caused by a right or privilege created by the state).  Thus, the First Amendment argument is completely frivolous.

Congress knew precisely what it was doing in 1970 when it enacted RICO. It studied federal and state law and found the "remedies available [in certain cases]…are unnecessarily limited in scope and impact…" Statement of Findings and Purpose, Pub. L. 91-452, 84 Stat. 923 (1970).  It then had as its purpose to "provid[e] enhanced sanctions and new remedies…[in RICO]." *Id*.  It went further, providing that RICO should be "liberally construed to effectuate its

2

remedial purposes." Pub. L. 91–452, §904(a), 84 Stat. 947; *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98 (1985)(same). Thus, cases falling within the statute should be welcomed by the courts as "[t]he object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, private attorneys general, dedicated to eliminating racketeering activity." *Rotella v. Wood,* 528 U.S. 549, 557 (2000)(quotations omitted).

That said, the Supreme Court also squarely teaches that making misrepresentations to harm a business rival will support a RICO claim. It makes no difference that the claim could have been brought as a common law tort or unfair competition action. *See Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 649-50 (2008)("suppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem they were injured in their business 'by reason of' a pattern of mail fraud…", unanimously affirming using RICO against competing bidder for lost profits). The only differences from that case are that the SPLC enterprise is not a competitor of CIS and the federal wires were used rather than the mails. But those differences are insignificant. SPLC's goal is to "destroy" and "wreck" CIS financially (¶¶12, 22) by making false statements about it. It is actionable under RICO, given the ongoing nature of the scheme.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Franklin v. Capitol Hilton Hotel*, 325 F. Supp. 3d 25, 28 (D.D.C.

2018)(quotations omitted).  "In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Id.* Determining the sufficiency of a complaint under Rule 12(b)(6) "is not a 'fact-based' question of law" (*Iqbal*, 556 U.S. at 674), therefore, any disputes or denials to the facts alleged in the Complaint belong in Defendants' Answers, not in a Motion to Dismiss.

## ARGUMENT

### I. The First Amendment Does Not Apply To CIS Because It Is Not A State Actor

The First Amendment only applies to state action, not to private parties.  *See, e.g., Sharp Corp., v. Hisene USA Corp.,* 292 F. Supp. 3d 157, 177-78 (D.D.C. 2017)("At bottom, the First Amendment 'is a restraint on government action, not that of private persons,'" rejecting argument for a "general public policy in favor of free speech" as an "end-run around the state action doctrine"); *Bronner v. Duggan,* 249 F. Supp. 3d 27, 41 (D.D.C. 2017)("generally applicable laws do not offend the First Amendment simply because their enforcement…has incidental effects on expression…To trigger First Amendment protection, the infringement upon speech must have arisen from state action of some kind.")(quotations omitted).  The Complaint alleges no state action.  The Defendants are employees of SPLC, a private non-profit entity.  ¶¶3, 27.  And the Motion does not even make the suggestion of any state action.  It is a stunning omission and is fatal to the First Amendment argument.

CIS anticipates Defendants will attempt to salvage their argument in their reply with the contention that state action is supplied by the mere use of the RICO statute.  But this is wrong.  In order to show state action in a constitutional deprivation the plaintiff must satisfy the Supreme Court's stringent two-part test requiring the loss of "some right or privilege created by the state"

caused by a "state actor." *See, e.g., American Mfrs,* 526 U.S. at 50. There, the Supreme Court rejected the contention that private insurers were state actors because they availed themselves of a state statute which allegedly deprived plaintiffs of due process. It explained: "We have never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it." *Id.* at 53; *see also, Flagg Bros, Inc. v. Brooks,* 436 U.S. 149, 165 (1978)("By the same token, the State of New York is in no way responsible for Flagg Brothers' decision, a decision which the state in §7-210 permits but does not compel," rejecting the contention that a private party's use of a statute which led to an alleged constitutional tort made it a state actor).

The D.C. Circuit used the same reasoning to reject the claim that the deprivation of strike benefits becomes a First Amendment violation merely because it was authorized by a collective bargaining agreement governed by the National Labor Relations Act, a federal statute. *See Kelinske v. Lubbers,* 712 F.2d 471, 476 (D.C. Cir. 1983)(applying the Supreme Court's two-part test for state action). And this Court has applied this reasoning in the First Amendment context. *Bronner,* 249 F. Supp. 3d at 41 ("Mere approval of or acquiescence in the initiatives of a private party does not constitute state action in the First Amendment context," rejecting First Amendment challenge to actions of a private non-profit group). Thus, there is plainly no state action here and, accordingly, the First Amendment does not apply.

But even absent the state action question, the First Amendment does not apply to fraudulent statements, which is what this Complaint alleges. *See, e.g., Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003)("But the First Amendment does not shield

fraud.")(citing authorities); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009)(same).

Moreover, "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution." *Cantwell v. Connecticut,* 310 U.S. 296, 309-10 (1940). Such were the views of the Court in *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571–72 (1942): "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the…libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury…" *Id.*; *see also Beauharnais v. People of the State of Ill,* 343 U.S. 250, 257-58 (1952)("No one will gainsay that it is libelous falsely to charge another with being a rapist, robber, [or a] carrier of knives ….", upholding criminal libel statute). Thus, the epithet "hate group," which is an SPLC euphemism for "racist," is unprotected by the First Amendment if made falsely.

Accordingly, courts have rejected First Amendment challenges to fraudulent or extortionate speech in RICO cases. *See, e.g., Smithfield Foods, Inc. v. United Food and Commercial Workers Intern. Union,* 585 F. Supp. 2d 789, 806 (E.D. Va. 2008)(rejecting First Amendment challenge to RICO claim predicated on extortion); *Titan Intern., Inc. v. Becker,* 189 F. Supp. 2d 817, 827 (C.D. Ill. 2001)("The First Amendment does not protect threatening speech," denying motion to dismiss RICO claim); *Teamsters Local 372, Detroit Mailers Union Local 2040 v. Detroit Newspapers,* 956 F. Supp. 753, 762 (E.D. Mich. 1997)(rejecting First Amendment to RICO because alleged protected speech was also criminal). So the First Amendment is not a shield from RICO.

## II.      The Complaint Does Not Allege Defamation

The Motion contends that "what CIS alleges is garden-variety defamation- not wire fraud." Motion at 10. It asserts, citing *Porcelli v. United States,* 404 F.3d 157, 162 (2d Cir. 2005), that wire fraud requires a showing of "intent to profit." *Id.* But the wire fraud statute[2] does not have that requirement, and has not been interpreted to have it by this Circuit. Rather, this Court has rejected the argument that the mail and wire fraud statutes are to be read like the common law of fraud, which does require that the defendant obtain the victim's property. *See, United States v. Han,* 280 F. Supp. 3d 144, 153 (D.D.C. 2017)("Unlike the common-law fraud, which has an essential element that the defendant actually obtain or cause another to lose property, the focus in wire fraud is on the intent and purpose. A defendant who devised a scheme to bilk a victim out of his money using wire communications but never received any property can be guilty of wire fraud but not first-degree fraud.")(citations and quotations omitted).

This Court has therefore applied this principle to a civil RICO claim where the defendant did not obtain, or intend to obtain, property from the victim, but rather merely used interstate wires to harm the victim. *See Feld Entertainment Inc. v. American Society for the Prevention of Cruelty to Animals,* 873 F. Supp. 2d 298, 318 (D.D.C.)("Mail fraud lies whether or not the perpetrator ends up with the victim's property or money," rejecting the argument Defendants make); *accord United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003)("We likewise reject

---

[2] 18 U.S.C. §1343 states, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire…communication in interstate…any writings… for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

7

Defendants' argument that the mail and wire fraud counts must allege an intent to achieve personal gain."); *United States v. Stockheimer*, 157 F.3d 1082, 1087–88 (7th Cir. 1998)("An intent to defraud [for mail fraud] does not turn on personal gain…all that matters is that he intended to inflict a loss."). And the Complaint alleges that it was the Defendants' goal to "destroy" and "wreck" CIS financially. ¶¶12, 22. So the Motion's argument here is wrong and unsupported by any precedent from this Circuit.

Moreover, CIS is not suing to redress harm to its reputation, as the Motion at 11 contends. It is suing to redress *lost donations*. *See, e.g.,* ¶¶23-24. Many RICO cases seek as damages lost profits. *See, e.g., Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 668 (S.D.N.Y. 2016)(holding that a RICO complaint alleging "the [false] statements played a material and substantial part in inducing others not to deal with plaintiffs, with the result that special damages, in the form of lost dealings, were incurred," stated a claim); *Astech-Marmon, Inc. v. Lenoci,* 349 F. Supp. 2d 265, 270 (D. Conn. 2004)("But if a plaintiff can prove that it lost a contract because of a racketeering scheme, it is entitled to be compensated for that injury").

The Supreme Court affirmed such a case in *Bridge* (cited *supra*). The Motion to Dismiss cites no authority supporting the argument that CIS is not permitted to use RICO to recover damages caused by the false statements of the Defendants. This case is similar to *Bridge* and no legal bar to recovery has been cited.

### III. The Fraudulent Statement Is Actionable

The Motion also contends that calling CIS a hate group is non-actionable opinion under the First Amendment. Motion at 15-19. As detailed above, the First Amendment does not apply to this case.

Additionally, it is hardly clear that calling CIS a hate group is purely an opinion.[3]  It is predicated upon SPLC's detailed definition of a "hate group," which is objective and factual. ¶¶13-14.  The Motion admits this by detailing SPLC's "reasons" for designating CIS a hate group.  Motion at 17.  CIS' theory is that it does not meet SPLC's own hate group definition. ¶¶15-18; Motion at 4.  If it does not, which is a question of applying the veracity of the facts to SPLC's stated definition, then the designation is false and can support a claim of wire fraud. This should be a jury question, not something the court can determine now.  In *United States v. Philip Morris,* 449 F. Supp. 2d 1, 853-54 (D.D.C. 2006) the Court found deceptive statements about cigarettes to be factual enough to be actionable as wire fraud and RICO.

The Motion, citing defamation case law, contends this still would not be actionable "because it constitutes a constitutionally protected conclusion based on disclosed facts."  Motion at 16.  Again, it is retreating to its inapplicable First Amendment analysis.  No such theory of "conclusion based on disclosed facts" exists under wire fraud or RICO.  This argument simply does not apply and must be rejected.

    **IV.**    **Injunctive Relief Is Permissible Under RICO**

The Motion wrongly contends that an injunction prohibiting Defendants from further calling CIS a hate group and compelling a retraction are unconstitutional.  Motion at 14.  Once again, it is wrong.  The D.C. Circuit has affirmed an injunction under RICO to restrain further

---

[3] *See Mar-Jac Poultry v. Katz,* 773 F. Supp. 2d 103, 121-22 (D.C. D.C 2001):

> There is no wholesale constitutional protection for expressions of opinion; opinions are actionable when a reasonable trier of fact could interpret the statement to imply an assertion of objective fact that is defamatory…To ensure space for imaginative expression and rhetorical hyperbole, a statement of opinion is actionable only if it implies an explicit or implicit factual foundation and therefore is objectively verifiable. (citations, quotations omitted).

false statements. *United States v. Philip Morris USA Inc.,* 801 F.3d 250, 262 (D.C. Cir. 2015). And it also affirmed an injunction requiring the defendant to make "corrective statements." *Id.,* 855 F.3d 321, 325 (D.C. Cir. 2017).

### V. The Motion's Cursory Challenges To §1962 Do Not Provide A Basis For Dismissal

Putting aside the issues related to the First Amendment, the Defendants then attempt to challenge—in an extraordinarily cursory manner in a footnote[4]—various other aspects of the RICO claim. *See* Motion at 13, n.4. These arguments also provide no basis for dismissal.[5]

First, the footnote cites *Western Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) for the proposition that there is no "pattern of racketeering" because there is a single scheme with a single victim. *Market Square*, however, deals with how "closed-ended continuity" is analyzed, not "open-ended continuity," which is alleged by CIS. *See, e.g.,* ¶¶24, 28. CIS' allegations of an ongoing scheme beginning in October 2017 are more than plausible because the Complaint alleges consistent and frequent blog postings throughout 2018. *See* ¶19.[6] Indeed, a fair reading of the Motion certainly

---

[4] "A footnote is no place to make a substantive legal argument on appeal; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture." *CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014); *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)("However, arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"). Any attempt by Defendants to amplify and/or expand these arguments on reply should not be permitted.

[5] "The elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997). This case alleges a conspiracy under §1962(d) to violate §1962(c).

[6] The Complaint was filed in early January 2019 and a demand letter with a draft complaint was sent to Defendants in November 2018. After the Complaint was filed, the Defendants also recently issued a new posting on their website ("Intelligence Report, Spring 2019, Issue 166," posted on February 19, 2019), continuing to label CIS a hate group. *See* https://www.splcenter.org/sites/default/files/intelligence_report_166.pdf

indicates Defendants have no intention of ceasing their postings about CIS in the future. The threat of repetition is very real. Accordingly, an open pattern is sufficiently alleged. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242–43 (1989)("The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendants' ongoing legitimate business… or of conducting or participating in an ongoing and legitimate RICO 'enterprise'"); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 410 (6th Cir. 2012)(finding four predicate acts spanning a two months satisfied open pattern).

Next, *the same footnote* contends that Beirich and Cohen's individual roles in the conspiracy have not been identified. But this is incorrect. The Complaint alleges that both Defendants agreed to designate CIS as a hate group, and that Beirich was the person responsible for creating and posting the steady stream of blogs falsely depicting CIS as a hate group. As the President of SPLC, Cohen was responsible for approving and directing all of Beirich's actions in this regard. *See* ¶¶8, 9, 10, 13, 18, 19.

Lastly, CIS' injury was proximately caused by the wire fraud alleged, contrary to *the same footnote's* contention otherwise. Certainly, CIS' injuries are not derivative of any other person's injuries, there is no more directly injured party who can be counted on to sue for this violation, and there are no problems apportioning damages. Nor is there any issue with ascertaining the amount of damages caused by Defendants. Indeed, the amounts of CIS' damages are quite easily identified. ¶24. That the fraudulent postings were made to a third party (and not to CIS) does not defeat RICO causation. The Supreme Court has been very clear on that. *See Bridge*, 553 U.S. at 660–61 (2008). To be sure, the Complaint specifically alleges that the AmazonSmile Program removed CIS from its program based on the Defendants' website

postings labeling CIS a hate group.  ¶¶23-24.  Thus, at the pleading stage, CIS has more than met its burden on proximate causation and damages.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss should be denied in its entirety.

Dated: February 26, 2019

Respectfully submitted,

/s/ Howard Foster

Howard Foster
Matthew Galin
Foster PC
150 N. Wacker Drive
Suite 2150
Chicago, IL 60606
(312) 726-1600
HFoster@fosterpc.com
Mgalin@fosterpc.com
Attorney for Plaintiff, *pro hac vice*

/s/ G. Robert Blakey

G. Robert Blakey
7002 E. San Miguel Ave.
Paradise Valley, AZ 85253
D.C. Bar No. 424844
(574) 514-8220
Blakey.1@nd.edu
Attorney for Plaintiff

/s/ Julie Axelrod

Julie Axelrod
Center for Immigration Studies
1629 K Street, NW, Suite 600
Washington, D.C. 20006
D.C. Bar No. 1001557
(703) 888-2442
jba@cis.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2019, I served this Response Brief on all counsel of record, via ecf.

/s/ Julie Axelrod

Julie Axelrod
Center for Immigration Studies
1629 K Street, NW, Suite 600
Washington, D.C. 20006
D.C. Bar No. 1001557
(703) 888-2442
jba@cis.com
Attorney for Plaintiff