**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
**CENTER FOR IMMIGRATION STUDIES,**
:
              **Plaintiff,**
:
**v.**                                           Case No. 1:19-cv-00087-ABJ
:
**RICHARD COHEN and HEIDI BEIRICH,**
:
              **Defendants**.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

BALLARD SPAHR LLP

    Chad R. Bowman (D.C. Bar No. 484150)
    Dana R. Green (D.C. Bar No. 1005174)
    1909 K Street, NW, 12th Floor
    Washington, DC 20006
    Telephone: (202) 661-2200
    Fax: (202) 661-2299
    bowmanchad@ballardspahr.com
    greendana@ballardspahr.com

*Counsel for Defendants*

Date: March 5, 2019

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

I.  It Is Beyond Dispute That The First Amendment Limits Private Parties' Ability to Punish Speech Through Tort Claims................................................................2

II. The First Amendment Applies Regardless of the Tort Alleged .........................................6

III. Plaintiff Fails to Show the Statement at Issue is Capable of Objective Proof....................7

IV. Defendants' Challenges to the RICO Claim are not "Cursory" – They are Fatal................................................................................................................................9

CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999)..................................................................................................................2, 5

*Beauharnais v. Illinois*,
    343 U.S. 250 (1952).....................................................................................................................4

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984).....................................................................................................................5

*Bronner v. Duggan*,
    249 F. Supp. 3d 27 (D.D.C. 2017)..............................................................................................2

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940).....................................................................................................................4

*Chaplinsky v. State of New Hampshire*,
    315 U.S. 568 (1942).....................................................................................................................4

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991).....................................................................................................................2

*Dempsey v. Sanders*,
    132 F. Supp. 2d 222 (S.D.N.Y. 2001).........................................................................................9

*Evercrete Corp. v. H-Cap Ltd.*,
    429 F. Supp. 2d 612 (S.D.N.Y. 2006).........................................................................................9

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978).....................................................................................................................2

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) .......................................................................................................7

*Foretich v. Advance Magazine Publishers, Inc.*,
    765 F. Supp. 1099 (D.D.C. 1991)...............................................................................................7

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).....................................................................................................................5

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010).......................................................................................................................10

*Holmes v. Secs. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)...................................................................................................................10

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988)......................................................................................................4, 5, 7

*Kolinske v. Lubbers*,
  712 F.2d 471 (D.C. Cir. 1983).................................................................................................2

*Medinol Ltd. v. Boston Sci. Corp.*,
  346 F. Supp. 2d 575 (S.D.N.Y. 2004).....................................................................................9

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1997)......................................................................................................................8

*Montgomery v. Risen*,
  197 F. Supp. 3d 219 (D.D.C. 2016)........................................................................................8

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)..............................................................................................................2, 4

*New York Times v. Sullivan*,
  376 U.S. 254 (1964)..............................................................................................................2, 5

*Phila. Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)..................................................................................................................5

*Sharp Corp. v. Hisense USA Corp.*,
  292 F. Supp. 3d 157 (D.D.C. 2017).........................................................................................2

*Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*,
  585 F. Supp. 2d 789 (E.D. Va. 2008) .....................................................................................3

*Snyder v. Phelps*,
  562 U.S. 443 (2011)..................................................................................................................2

*Teamsters Local 372 v. Detroit Newspapers*,
  956 F. Supp. 753 (E.D. Mich. 1997)...................................................................................3, 4

*United States v. Philip Morris USA, Inc.*,
  449 F. Supp. 2d 1 (D.D.C. 2006).............................................................................................8

**Statutes & Other Authorities**

First Amendment ................................................................................................................... *passim*

Jessica A. Clarke, *Against Immutability*, 125 Yale L.J. 2 (2015) .....................................................9

Defendant Richard Cohen, the President of the Southern Poverty Law Center ("SPLC"), and Defendant Heidi Beirich, the director of SPLC's Intelligence Project, respectfully submit this reply to Plaintiff Center for Immigration Studies ("CIS") Opposition to Motion to Dismiss, ECF Dkt. 13 ("Opposition" or "Opp.").

## PRELIMINARY STATEMENT

In its opening line, the Opposition confirms that the entire basis for the pleaded RICO claim in this case is the supposed "ongoing scheme" by SPLC to describe CIS publicly as a "hate group." Opp. at 1. This, CIS nevertheless alleges, is *not* defamation. *Id.* at 7. To reach this conclusion, the Opposition makes the extraordinary argument that the First Amendment is inapplicable to a lawsuit challenging SPLC's speech because CIS is not a "state actor." *Id.* at 2. Such an argument ignores more than fifty years of Supreme Court precedent, innumerable federal and state decisions applying that precedent, and even the reasoning of cases relied upon in the Opposition itself. The Opposition then claims that because the speech at issue is allegedly "fraud" or "libel"—while still disputing that the Complaint seeks to repackage an infirm defamation claim as a RICO violation—it falls outside any constitutional protection. *Id.* at 5-6. This, too, is clear error: The decisions cited by CIS for this proposition predate modern First Amendment law. CIS's arguments are both unfounded and overtly misleading.

As demonstrated in the opening memorandum ("Mem."), SPLC described CIS as a "hate group" based on a rationale that was laid out in detail to readers. Such a characterization is not actionable as a matter of constitutional law because it is either an expression of "pure" opinion or a statement of opinion based on fully disclosed facts. Regardless of the claim plaintiff chooses to target this speech—whether RICO, wire fraud, defamation, or any other tort—it does not alter the constitutional analysis or the outcome here: Under the First Amendment, calling CIS a "hate group" is not actionable.

I. **It Is Beyond Dispute That The First Amendment Limits Private Parties' Ability to Punish Speech Through Tort Claims**

CIS's primary argument in opposition to dismissal is that "[t]he First Amendment does not apply to CIS because it is not a state actor." Opp. at 2, 4-5.[1] This is wrong. When a civil litigant seeks damages based on speech, the "state action" requirement is satisfied by a court's imposition of liability. A half-century of Supreme Court decisions—from *New York Times v. Sullivan*, 376 U.S. 254 (1964), to *Snyder v. Phelps*, 562 U.S. 443 (2011)—rest on this bedrock principle. As the Court explained in *Sullivan*, in "a civil lawsuit between private parties," the First Amendment prohibits courts from imposing liability if it would "impose invalid restrictions on [defendants'] constitutional freedoms of speech and press." *Sullivan*, 376 U.S. at 265; *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991) ("Our cases teach that the application of state rules of law in state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action'"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 n.51 (1982) ("Although this is a civil lawsuit between private parties, the application of state rules of law by the Mississippi state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action'").

---

[1] In making this argument, CIS relies on inapposite cases where private parties' actions, outside of the judicial process, were alleged to have curtailed or limited other private parties' speech. *See, e.g. Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157 (D.D.C. 2017) (finding that enforcement of an arbitral award, obtained through voluntary private arbitration, did not constitute "state action"); *Bronner v. Duggan*, 249 F. Supp. 3d 27 (D.D.C. 2017) (affirming the enforceability of private parties' contract that voluntarily limited the parties' ability to engage in a boycott); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (rejecting a § 1983 claim where a private health insurer withheld payment for disputed medical treatment); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) (the private sale of goods stored in a warehouse, for non-payment of rent, does not constitute "state action"); *Kolinske v. Lubbers*, 712 F.2d 471 (D.C. Cir. 1983) (union's denial of strike benefits to worker did not constitute "state action.").

Indeed, the very RICO cases relied on by CIS make clear that the First Amendment applies to civil claims brought by non-state actors. *See* Opp. at 6. In *Smithfield*, for example, a plaintiff claimed a union's aggressive tactics crossed the line into extortion and other predicate RICO offenses. *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 585 F. Supp. 2d 789, 795-96 (E.D. Va. 2008). When the union raised a First Amendment defense, the court analyzed the distinction between protected speech and criminal activity. In doing so, the court recognized that "meetings, speeches, petitions, nonviolent picketing, and boycotts are all forms of speech and conduct that are entitled to protection under the First Amendment," and are not actionable predicate RICO acts, even if they result in financial harm to a business and even if "it may embarrass others or coerce them into action." *Id.* at 803 (citations omitted). Therefore, "the intersection of [plaintiff's] RICO claims and the First Amendment must be analyzed under the specific facts of this case"—and the court proceeded to do just that. *Id.* at 804-06. Nowhere did the court suggest that because Smithfield was a private actor, its RICO claim *could not* violate defendants' First Amendment rights.[2]

The other cases misleadingly cited by the Opposition for their specific outcomes reached those results after applying the same legal analysis. Opp. at 6. They did *not* establish any rule that "the First Amendment is not a shield from RICO." *Id.* In *Titan International Inc. v. Becker*, for example, it was only because the specific speech at issue represented "false, violent, and threatening" extortion that it fell outside First Amendment protection. 189 F. Supp. 2d 817, 827 (C.D. Ill. 2001); *see also Teamsters Local 372 v. Detroit Newspapers*, 956 F. Supp. 753, 762

---

[2] The court noted also that "*In Scheidler v. NOW* . . . Justice Souter specifically noted that the Court's decision was a narrow procedural ruling that in no way meant that a later assertion of First Amendment rights could not protect activities normally targeted under RICO. 510 U.S. 249 (1994) (Souter, J., concurring)." *Smithfield*, 585 F. Supp. 2d at 804-05.

3

(E.D. Mich. 1997) (speech soliciting "extortion, arson, robbery and destruction of property" would not receive First Amendment protection).³  Although the courts in those cases ultimately did determine that specific speech at issue exceeded constitutional protections, they recognized that the First Amendment *could* preclude civil claims brought by non-state actors under RICO. The reasoning in those decisions is thus entirely consistent with the cases cited by defendants that dismissed RICO claims on First Amendment grounds.  Mem. at 10-14.

CIS next argues that "the First Amendment does not apply to fraudulent statements, which is what this Complaint alleges."  Opp. at 5.  Of course, speech acts can, under specific circumstances, give rise to civil or criminal liability.  Blackmail, extortion, fraud, and other criminal acts necessarily involve communication.  However, merely pleading the word "fraud" does not transform public statements into fraud or deprive defendants of the ability to assert a First Amendment defense.  Regardless of how a plaintiff choses to characterize its claim, the Court must independently evaluate whether imposing liability would violate the First Amendment.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-57 (1988).

Finally, the Opposition continues to err by arguing that defamatory speech is not "safeguarded by the Constitution" and asserting that imposing civil penalties for libel "ha[s] never been thought to raise any Constitutional problem."  Opp. at 6 (citations omitted).  CIS ignores more than 50 years of legal decisions, reaching instead back to the 1940s and 50s for support.  *Id.* (citing *Cantwell v. Connecticut*, 310 U.S. 296 (1940), *Chaplinsky v. State of New Hampshire*, 315 U.S. 568 (1942), and *Beauharnais v. Illinois*, 343 U.S. 250 (1952)).  Those decisions are no longer good law for the proposition they are offered to support, as CIS either is

---

³ The court in *Detroit Newspapers* initially criticized the defendants for failing to explain how state action was satisfied.  956 F. Supp. at 762.  But the Court then correctly answered its own rebuke—and avoided making a clear error of law—relying on *NAACP*, 458 U.S. 886.  *Id.*

aware or would have been aware with even cursory legal research. Among other things, the cited decisions predate one of the most significant decisions in First Amendment law, *New York Times v. Sullivan*, 376 U.S. 254 (1964). In that decision, the Supreme Court held that the First Amendment provides important safeguards against private parties' attempts to impose civil liability for speech. The *Sullivan* court expressly rejected the proposition CIS urges now, that the Constitution does not protect libelous publications. *See id.* at 269 ("[L]ibel can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment."); *id.* at 273 ("[N]either factual error nor defamatory content suffices to remove the constitutional shield from criticism of official conduct."). In *Sullivan* and its progeny, the Court established significant procedural and substantive First Amendment protections against the imposition of civil liability for speech—even for demonstrably false statements. *Id.* at 279-84 (false statements about public officials are not actionable unless "actual malice" fault is shown); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347-48 (1974) (false statements about private figures not actionable unless, at minimum, negligence is shown); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984) (obligation to evaluate actual malice is "a constitutional responsibility that cannot be delegated to the trier of fact"); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (plaintiff bears the burden of showing falsity, as well as fault); *Falwell*, 485 U.S. at 51-57 (First Amendment protections for defamation cannot be evaded by pleading alternative torts). The Opposition's thesis that alleged libel receives no First Amendment protection is therefore legally meritless—and has been since Lyndon B. Johnson was the president.

## II.     The First Amendment Applies Regardless of the Tort Alleged

CIS urges that it has properly pled wire fraud, not defamation. Opp. at 7. In an effort to make a distinction between the two claims, CIS argues that the speech at issue—calling CIS a "hate group"—meets the statutory elements of wire fraud and therefore is actionable, and that CIS's wire fraud claim is distinguishable from a defamation claim because CIS is "not suing to redress harm to its reputation" but "suing to redress *lost donations*." *Id*. at 8. These efforts to distinguish RICO from defamation over an alleged "ongoing scheme" to call it a "hate group" in public statements, *id*. at 2, are unavailing.

CIS's argument that wire fraud requires only intent to harm, and no showing of profit, only draws its claim closer to the elements of a defamation claim. *Id*. at 7. Moreover, CIS's articulation of the elements of wire fraud emphasizes the relevance of First Amendment protections for opinion: As CIS notes, wire fraud—like defamation—requires a showing that statements were "false." *Id*. at 3, 7 n.2 ("by means of *false* or fraudulent pretenses" (emphasis added)). As set out in defendants' opening memorandum, as a matter of law the statements at issue are non-actionable opinion because they are incapable of being proven empirically either true or false. *See* Mem. at 15-19. Finally, and most centrally, CIS's claim that it is seeking redress for lost donations, not reputational harm, is a distinction without meaning because the donations allegedly dried up in light of the public speech. *See* Opp. at 8. As set out in the Complaint, the damages alleged are that the "hate group" moniker affected CIS's standing such that AmazonSmile terminated CIS's account, which in turn reduced the amount of donations to CIS. Compl. ¶¶ 23-25. But this is identical to the typical pleading in a defamation claim, which generally requires that reputational harm caused some damage.

Ultimately, the nonexistent distinctions CIS attempts to draw underscore that this is precisely the kind of attempted end run around the First Amendment that the Supreme Court expressly rejected in *Hustler v. Falwell*. The Court directed that constitutionally based defamation limits apply to *all* claims seeking to recover damages for reputational injury, regardless of how the claims may be styled. 485 U.S. at 51-57; *see also Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiff could not "recover defamation-type damages under non-reputational tort claims, without satisfying the stricter (First Amendment) standards of a defamation claim" because "such an end-run around First Amendment strictures is foreclosed by *Hustler*"); *Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099, 1104-06 (D.D.C. 1991) (the law forecloses creative pleading as a means for "end-running other requirements of defamation law."); Mem. at 13-14 (collecting cases).

### III.     Plaintiff Fails to Show the Statement at Issue is Capable of Objective Proof

Because CIS has expressly disavowed any defamation claim, Opp. at 7, the Court need not consider whether the Complaint could possibly be amended to state a viable tort claim. Were the Court to reach that question, however, the statement at issue—that CIS is an anti-immigrant "hate group"—is non-actionable under the First Amendment because it is either an expression of "pure" opinion or, at most, a conclusion based on disclosed facts, as outlined in defendants' opening memorandum. Mem. at 15-19. The Opposition largely fails to engage with the applicable law, because CIS again wrongly asserts that "the First Amendment does not apply to this case." Opp. at 8. CIS does, however, offer two brief responses. Neither has merit.

First, CIS's presents a "theory" that even if the term "hate group" generally lacks a clear definition, in this case it should be treated as a factual statement because SPLC's use of the word "does not meet SPLC's own hate group definition" and therefore a jury can "appl[y] the veracity

of the facts to SPLC's stated definition." Opp. at 9. However, whether a statement is non-actionable opinion is evaluated objectively by the court—not subjectively based on the speaker's perspective. *Montgomery v. Risen*, 197 F. Supp. 3d 219, 247-48 (D.D.C. 2016) ("Whether a statement asserts actionable facts or implies such facts is a question of law for the court to determine as a threshold matter." (internal marks and citation omitted)), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017). CIS offers no citation or support for the "theory" that a defendant's definition of a word supplants the court's obligation to evaluate whether a statement is actionable, and this theory runs contrary to well-settled law.[4] *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-22 (1997) (merely prefacing a factual statement with "In my opinion" or "I think" is not enough to insulate the statement from liability: the court must independently and objectively evaluate the words at issue).

      The Opposition's theory also fails its own logic. CIS claims that it "did not fit SPLC's 'hategroup definition'" because the SPLC defines "hate group" to be one that maligns people based on "immutable characteristics" and immigration status "is not an 'immutable characteristic'" Compl. ¶¶ 14-15, 18, 21; Opp. at 9. As the Complaint itself makes clear, however, SPLC's definition of "hate group" is not limited to immutable characteristics: "SPLC defines a 'hate group' as 'an organization that . . . has beliefs or practices that attack or malign an entire class of people, *typically* for their immutable characteristics." Compl. ¶ 14 (emphasis added). Moreover even the term "immutable characteristic" is, itself, mutable. *See generally*,

---

[4] CIS attempts to analogize this case to tobacco litigation, where—unsurprisingly—the court found "overwhelming evidence" that defendant tobacco companies and their executives deliberately and for decades made false statements in advertising and commercial speech such as that smoking does not cause lung cancer and nicotine is not an addictive drug, despite possessing internal scientific research proving the contrary. *See, e.g. United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 27, 854-859 (D.D.C. 2006), *aff'd in part, vacated in part on other grounds*, 586 F.3d 1095 (D.C. Cir. 2009).

*e.g.*, Jessica A. Clarke, *Against Immutability*, 125 Yale L.J. 2 (2015) (detailing evolving notions of immutable characteristics). Even under CIS's own baseless theory, therefore, calling CIS a "hate group" is not subject to being empirically disproved, and thus is not actionable.

### IV. Defendants' Challenges to the RICO Claim are not "Cursory" – They are Fatal

Because this case is facially a defamation action pleaded as a RICO lawsuit, it is properly dismissed both because the First Amendment issues are dispositive and because defamation is not a predicate act under RICO, without any need to reach the other substantive failings of plaintiff's RICO claim. Nevertheless, as set out in defendants' opening memorandum, the RICO claim fails for a number of additional dispositive reasons. *See* Mem. at 13 & n.4. Plaintiff's efforts to overcome these pleading deficiencies are unavailing. For example, CIS argues that it has adequately shown a "pattern" of racketeering activity because it alleges "open-ended" continuity through SPLC posts calling CIS a "hate group." Opp. at 10; Compl. ¶ 28. Regardless of whether plaintiff asserts a closed or open-ended scheme, however, CIS asserts a single scheme with a single victim, which is insufficient to sustain a RICO claim. *See, e.g. Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624-25 (S.D.N.Y. 2006) (courts "have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity" (internal marks omitted) (quoting *Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 616 (S.D.N.Y. 2004)); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) ("Essentially, courts have held that where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established." (collecting cases)).

CIS's alleged injury is also too contingent and attenuated to support a claim. CIS asserts that SPLC's designation of CIS as a "hate group" led AmazonSmile to cease working with CIS, which prevented unknown donors from making charitable donations to CIS through the specific AmazonSmile program.[5] Compl. ¶¶ 23-24. Notably, CIS does not allege that AmazonSmile was the only method by which donations could be made to the organization. CIS also speculates that the use of the word "hate group" "likely deterred contributions" from other sources. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Holmes*, 503 U.S. at 270-71. CIS's claim for damages is premised on theoretical lost donations by unknown third parties, through a specific donation program to which it was neither entitled nor assured. This is simply not the kind of "but for," proximate injury that can sustain a RICO claim. For these reasons, and others described in the opening memorandum, CIS fails to state a viable RICO claim even apart from the Complaint's fundamental flaw of packaging a defamation claim challenging constitutionally protected speech as a RICO violation.

---

[5] AmazonSmile is a website that permits consumers to designate a charitable organization to receive a donation, through the AmazonSmile Foundation, of 0.5 percent of the purchase price of eligible products. Consumers may change their designated charity at any time. *See* http://smile.amazon.com/about.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant their motion and enter an order dismissing the Complaint, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: March 5, 2019

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (D.C. Bar No. 484150)
Dana R. Green (D.C. Bar No. 1005174)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
greendana@ballardspahr.com

*Counsel for Defendants*